## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**TRAFFIC JAM EVENTS, LLC**                          **CIVIL ACTION**

**VERSUS**                                           **NO: 2:21-CV-122**

**WILLIAM LILLEY, LILLEY**                           **SECTION: "H"**
**CONSULTING, INC., AND**
**TY PRESTWOOD**

## ORDER AND REASONS

Before the Court is Defendants William Lilley and Lilley Consulting, Inc.'s Motion to Dismiss First Amended Complaint (Doc. 32). For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

This action arises from an alleged breach of contract. Plaintiff Traffic Jam Events, LLC ("Traffic Jam") provides automotive marketing and advertising services. Defendants William Lilley and Ty Prestwood provided services to Plaintiff as independent contractors. As part of their work arrangement with Plaintiff, Plaintiff required that Lilley and Prestwood sign an agreement titled "Independent Contractor Non-Disclosure and Non-Solicitation Agreement" (the "Agreement").[1] In pertinent part, the Agreement prohibits independent contractors from using, disclosing, or removing

---

[1] Defendant Lilley signed his Agreement on April 19, 2020. Defendant Prestwood executed an identical Agreement on April 20, 2020.

Plaintiff's confidential information and from soliciting business from Plaintiff's customers while working for Plaintiff and for two years thereafter. Following the termination of Defendant Lilley's services for Plaintiff on December 21, 2020, Lilley opened a similar business, Strictly Results Marketing Group, doing business as Lilley Consulting, Inc. ("LCI"). Defendant Prestwood began working for LCI sometime thereafter. In Plaintiff's First Amended Complaint, Plaintiff alleges that Lilley, LCI, and Prestwood solicited business from Plaintiff's customers and used, disclosed, or transferred Plaintiff's confidential information in derogation of the Agreement. Plaintiff brings claims against them under Louisiana law for breach of contract and intentional interference with business relations.

Now before the Court is Defendants Lilley and LCI's Motion to Dismiss Plaintiff's First Amended Complaint wherein they ask this Court to dismiss Plaintiff's claims against them. Plaintiff opposes the Motion.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[2] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[4] The court need not, however,

---

[2] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).
[3] Id.
[4] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

accept as true legal conclusions couched as factual allegations.[5] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[6] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[7] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[8]

## LAW AND ANALYSIS

In Defendant Lilley and LCI's (hereinafter "Defendants") Motion to Dismiss, Defendants argue that: (1) the non-solicitation clause in the Agreement is unenforceable under Louisiana law; (2) Plaintiff has failed to state a claim for breach of the Agreement's confidentiality provisions; and (3) Plaintiff has failed to state a claim for tortious interference with business relations. The Court will discuss each in turn:

**A. The Enforceability of the Non-Solicitation Clause**

The Agreement signed by Lilley contains a provision titled "Non-Solicitation of Traffic Jam Customers." The provision states:

> For a period beginning on the date of this Agreement and ending two (2) years from the date of your termination as an independent contractor of Traffic Jam, you agree that you shall not, directly or by assisting others, solicit or attempt to solicit any business from any of Traffic Jam's customers, including prospective customers, with whom you had contact while working as an independent

---

[5] *Iqbal*, 556 U.S. at 678.

[6] *Id.*

[7] *Lormand*, 565 F.3d at 255–57.

[8] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

contractor for Traffic Jam, for purposes of providing automotive marketing products or services that are competitive with those provided by Traffic Jam. This non-solicitation restriction shall apply to territories where you provided automotive marketing products or services to Traffic Jam's customers, including prospective customers, for Traffic Jam. If Traffic Jam provides you with a customer, that customer shall remain a Traffic Jam customer after termination of your status as an independent contractor of Traffic Jam and shall be subject to this non-solicitation restriction.[9]

In its First Amended Complaint, Plaintiff contends that Defendants solicited Traffic Jam customers in breach of the non-solicitation provision of the Agreement. In their Motion to Dismiss, Defendants now argue that the non-solicitation provision is not enforceable under Louisiana law.[10]

Louisiana has a strong public policy disfavoring noncompetition agreements.[11] Accordingly, under Louisiana law, "every contract, agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business . . . shall be null and void" unless it meets the exceptions provided in Louisiana Revised Statute § 23:921.[12] Relevant to this matter is the exception found in Subsection (C), which provides:

Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within

---

[9] Doc. 1-2 at 2.

[10] Pursuant to the terms of the Agreement, Louisiana law governs the Agreement's interpretation and enforceability. *Id.*

[11] SWAT 24 Shreveport Bossier, Inc. v. Bond, 808 So. 2d 294, 298 (La. 2001) *superseded by statute on other grounds*, LA. REV. STAT. § 23:921(D) (internal citations omitted).

[12] LA. REV. STAT. § 23:921(A)(1).

a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.[13]

Defendants argue that the Agreement's non-solicitation provision is unenforceable under § 29:921 because (1) non-solicitation clauses are not enforceable against independent contractors under Subsection (C); (2) the non-solicitation clause fails to adequately specify a geographical limitation; and (3) the clause is impermissibly overbroad and vague. Finding the Agreement's non-solicitation clause unenforceable for failure to specify a geographical limitation, the Court does not address Defendants' first and third arguments.

Assuming that independent contractors are indeed subject to non-solicitation clauses, the non-solicitation clause must specify the geographic scope of the clause for it to be enforceable. As stated above, § 29:921(C) permits employees to agree "to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer *within a specified parish or parishes, municipality or municipalities, or parts thereof*, so long as the employer carries on a like business therein . . ."[14] Because of Louisiana's aversion to non-competition agreements, "[a] contract trying to fit into an *exception* to [the general rule against non-competition agreements]

---

[13] LA. REV. STAT. § 23:921(C).

[14] *Id.* (emphasis added).

must strictly comply with the requirements contained in the statute."[15] Accordingly, some Louisiana courts have found unenforceable non-competition or non-solicitation agreements that do not particularly specify the municipalities or parishes included in the geographic limitation.[16]

Here, the Agreement's non-solicitation restriction applies "to territories where you provided automotive marketing products or services to Traffic Jam's customers, including prospective customers, for Traffic Jam."[17] In Defendants' Motion to Dismiss, Defendants argue that the Agreement's non-solicitation clause is unenforceable as it fails to specifically delineate the parishes to which it applies. In response, Plaintiff contends that the non-solicitation clause is valid as Louisiana courts have upheld non-solicitation provisions "where the geographic limitation was identifiable by reference to the location of the employer's business or clients."[18]

Plaintiff asks this Court to follow the reasoning of *Petroleum Helicopters, Inc. v. Untereker*, wherein the Louisiana Third Circuit Court of Appeal upheld a clause prohibiting competition "within the parishes in which [the employer] carries on a like business," finding that the parishes were sufficiently "identifiable."[19] Defendants highlight, however, that many Louisiana Circuit Courts of Appeal have explicitly disagreed with the reasoning of *Petroleum*

---

[15] Team Env't Servs., Inc. v. Addison, 2 F.3d 124, 127 (5th Cir. 1993) (quoting Comet Indus., Inc. v. Lawrence, 600 So. 2d 85, 88 (La. App. 2d Cir.), *writ denied*, 604 So. 2d 1002 (La. 1992)). *See* L & B Transp., LLC v. Beech, 568 F. Supp. 2d 689, 693 (M.D. La. 2008).

[16] *L&B Transp.*, 568 F. Supp.2d at 693. *See, e.g*, Aon Risk Servs. of Louisiana, Inc. v. Ryan, 807 So. 2d 1058, 1060 (La. App. 4 Cir. 2002).

[17] Doc. 1-2 at 2.

[18] Doc. 35 at 13.

[19] 731 So. 2d 965, 968 (La. App. 3 Cir. 1999), *writ denied*, 747 So. 2d 40 (La. 1999).

*Helicopters, Inc.,* and instead held that Louisiana Revised Statue § 23:921 mandates an explicit listing of applicable parishes and municipalities.[20] Currently, there is no binding precedent under Louisiana law controlling this issue.[21] "If there is no ruling by the state's highest court on the specific question, the Court must make an *Erie* guess as to how the state's highest court would decide the issue."[22] Several federal courts in Louisiana have already made an *Erie* guess on this issue and have sided with Defendants, finding that Louisiana law demands "mechanical adherence" to the requirements of § 23:921.[23]

---

[20] *See e.g.,* Turner Pro. Servs., Ltd. v. Broussard, 762 So. 2d 184, 186 (La. App. 1 Cir. 2000, *writ denied,* 770 So. 2d 356 (La. 2000) ("In our opinion, *Petroleum Helicopters* goes too far, and we decline to follow it. Revised Statute 23:921(B) is an exception to Louisiana public policy against noncompetition agreements, and as such must be strictly construed. Simply complying with 'the spirit of 921' is not sufficient."); *Aon Risk*, 807 So. 2d at 1060. ("We beg to differ with the reasoning of our learned brothers of the Third Circuit. We find that the clear language of LSA–R.S. 23:921 requires that the agreement specify the parishes, etc., **and** that the employer must do business in those parishes. If this Court were to adopt the position espoused by the plaintiff, there would have been no reason for the legislature to have included the requirement that the parishes be specified."); Bell v. Rimkus Consulting Grp., Inc. of Louisiana, 983 So. 2d 927, 933–34 (La. App. 5 Cir. 2008), *writ denied sub nom.* Bell v. Rimkus Consulting Grp., Inc., 983 So. 2d 1276 (La. 2008) ("Although defendant contends that plaintiffs in their senior capacities possessed sufficient information which would have allowed them to determine or at least request information regarding which areas were prohibited in the non-competition agreement, we fail to find that the statute contemplates such an action on the employee's part. Rather, the statute requires that the parishes or municipalities be specified as an objective measure of the agreement's validity and for the employee to know and understand the limitations upon the signing of the agreement." (citing *Aon Risk*, 809 So. 2d at 1062)).

[21] Ferrellgas, L.P. v. McConathy, No. CIV.A 1:10-CV-00178, 2010 WL 1010831, at *4 (W.D. La. Mar. 15, 2010) ("The Louisiana Supreme Court has not definitively resolved this issue.").

[22] Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464, 468 (5th Cir. 2004).

[23] *Ferrellgas*, *L.P.,* 2010 WL 1010831, at *5; Total Safety U.S., Inc. v. Code Red Safety & Rental, LLC, 423 F. Supp. 3d 309, 315 (E.D. La. 2019) (Feldman, J.); SOUTHEASTRANS,

In *Total Safety U.S., Inc. v. Code Red Safety & Rental, LLC,* another section of this Court addressed the enforceability of a similar non-solicitation clause within the context of a Rule 12(b)(6) motion to dismiss.[24] In *Total Safety*, the at-issue non-solicitation clause was geographically limited "to the Parishes in which the Associate assisted Company in providing its products and services, as are indicated below by circling."[25] An exhibit to the contract listed all 64 parishes in Louisiana, but none of the parishes were circled.[26] The *Total Safety* court found the non-solicitation clause void under § 23:921.[27] In so holding, the court noted that, "[t]ellingly, the Fifth Circuit has never cited *Petroleum Helicopters*. It has instead cited *Aon Risk* and, accordingly, endorsed an interpretation of Louisiana Revised Statue 23:921(C) that requires specification of the parishes or municipalities to which a restrictive covenant applies."[28]

Moreover, the *Total Safety* court found that, despite the presence of a severability clause, the non-solicitation clause could not be saved by reformation.[29] Ordinarily, if a non-solicitation provision is geographically overbroad, Louisiana law permits courts to "rely on a severability provision to

---

INC. v. MORGAN LANDRY, ET AL., No. 20-CV-00086, 2021 WL 972098, at *6 (W.D. La. Mar. 15, 2021) ("Considering the applicable jurisprudence, the Court concludes that section 23:921 requires a specific listing of every parish in which an employer intends to restrict competition and in which that employer carries on a like business for an agreement not to compete or to solicit customers to be valid and enforceable.")

[24] 423 F. Supp. 309 (Feldman, J).

[25] *Id.* at 311.

[26] *Id.* at 312.

[27] *Id.* at 314.

[28] *Id.* at 313 n. 2 (citing Brock Servs., L.L.C. v. Rogillio, 936 F.3d 290, 299 (5th Cir. 2019); Arthur J. Gallagher & Co. v. Babcock, 703 F.3d 284, 292 (5th Cir. 2012)). *See also Aon Risk*, 802 So. 3d 1058.

[29] *Total Safety*, 423 F. Supp. at 315.

reform the overbroad provision and 'excise the offending language.'"[30] The *Total Safety* court, however, emphasized the distinction between provisions that are geographically overbroad—those specifying too many localities—from those that fail to specify any valid geographic area.[31] Citing case law from the United States Fifth Circuit Court of Appeals, the Louisiana First Circuit Court of Appeal, and the Eastern District of Louisiana, the *Total Safety* court found that, unlike a provision which is simply geographically overbroad, a provision that is deficient for failure to specify *any* geographical area cannot be reformed as it "would mean rewriting a disfavored contract into compliance with a narrowly drawn statutory exception."[32] The *Total Safety* court thus found the non-solicitation provision unenforceable in its entirety.[33]

This Court finds the analysis in *Total Safety* consistent with that of the majority of Louisiana Circuit Courts of Appeal and the United States Fifth

---

[30] Brock Servs., L.L.C. v. Rogillio, 936 F.3d 290, 296–97 (5th Cir. 2019) (quoting *SWAT 24*, 808 So. 2d at 309)); *Total Safety*, 523 F. Supp.3d. at 314.

[31] *See Total Safety*, 423 F. Supp. at 314.

[32] *See id.*; *Team Envtl. Servs., Inc.*, 2 F.3d at 127 (finding that a provision prohibiting competition within 200 miles of the employees' base of operations could not be saved through reformation under Louisiana law ); Vartech Sys., Inc. v. Hayden, 951 So. 2d 247, 260–61 (La. App. 1 Cir. 2006) ("While geographical limits may be inferred from the limits of the non-compete clauses in the non-competition agreements, we decline to reform the non-solicitation clauses pursuant to the savings clauses in favor of VarTech. Because LSA-R.S. 23:921 requires specificity regarding geographical limitations, the non-solicitation clauses must be able to stand on their own." (citations omitted)); Kimball v. Anesthesia Specialists of Baton Rouge, Inc., 809 So. 2d 405, 413 (La. App. 1 Cir. 2001), *writ denied sub nom.* Kimball v. Anesthesia Specialests of Baton Rouge, Inc., 811 So. 2d 883 (La. 2002), *and writ denied*, 811 So. 2d 886 (La. 2002) ("In this matter, there is a failure to include specified geographic areas as statutorily required. We cannot simply rewrite the non-compete clause so as to make it comply with the statute."); Gearheard v. De Puy Orthopaedics, Inc., No. CIV.A.99-1091, 1999 WL 638582, at *6 (E.D. La. Aug. 19, 1999) (Clement, J.) ("Ordinarily, however, Louisiana courts decline to save invalid non-competition provisions through reformation." (citations omitted)).

[33] *Total Safety*, 423 F. Supp. at 316.

Circuit and therefore adopts the reasoning therein.[34] Further, this Court rejects Plaintiff's argument that *Total Safety* is factually distinguishable. The *Total Safety* non-solicitation clause essentially limited its geographic reach to Louisiana parishes in which the employee assisted the employer.[35] Similarly, the at-issue non-solicitation clause is limited to "territories" where Defendants provided services to Plaintiff's current and potential customers.[36] As explained above, the non-solicitation clause's failure to specify the applicable parishes or municipalities is fatal to its enforceability. The Agreement's severability clause does not change the analysis. Accordingly, the Court grants the Motion to Dismiss Plaintiff's claim for breach of the non-solicitation clause.

## B. Breach of the Confidentiality Agreement

The Agreement prohibits independent contractors from using, disclosing, or removing confidential information.[37] The Agreement defines confidential information as information not generally known to the public or within the industry trade and includes a long list of examples of information that would be considered "confidential."[38] In Plaintiff's First Amended Complaint, Plaintiff alleges that Defendants "used, disclosed, or transferred Confidential Information in violation of the Agreements in order to unlawfully compete with Plaintiff."[39] In their Motion to Dismiss, Defendants now argue

---

[34] *See also* SOUTHEASTRANS, INC., 2021 WL 972098, at *5–6 ("The Fifth Circuit has followed the *Total Safety/Aon Risk* approach to geographic boundaries on non-competition agreements." (citing *Brock Servs., L.L.C.*, 936 F.3d at 296)).

[35] *Total Safety*, 423 F. Supp. at 311.

[36] The at-issue clause is arguably more ambiguous than that addressed in *Total Safety* as it does not define a "territory" or limit its scope to a certain state.

[37] Doc. 29-2 at 1–2.

[38] *Id.* at 1.

[39] Doc. 29 at 9.

that Plaintiff has failed to state a claim for breach of the Agreement's confidentiality provisions because Plaintiff does not specify the confidential information that Defendants allegedly misused. The Court disagrees.

To meet the *Twombly* plausibility standard, a Plaintiff need only plead "enough facts to rise above the level of sheer speculation, such that there is 'a reasonable expectation that discovery will reveal evidence' supporting a claim for relief."[40] The Court finds that Plaintiff has met this standard. The specific confidential information to which Plaintiff refers in its Complaint is information easily deduced in discovery. Accordingly, Defendants' Motion to Dismiss Plaintiff's claim for breach of the Agreement's confidentiality provisions is denied.

## C. Tortious Interference with Business Relations

Finally, Defendants argue that Plaintiff has not sufficiently stated a claim of tortious interference with business relations. The Louisiana tort is "based on the principle that the right to influence others not to enter business relationships with others is not absolute."[41] However, Louisiana courts view the tort with disfavor and have limited the tort's application by requiring that the plaintiff demonstrate actual malice, "which is difficult (if not impossible) to prove in most commercial cases."[42] In fact, "courts in this state frequently observe that 'there appear to be no reported cases in which anyone actually has

---

[40] Motiva Pats., LLC v. Sony Corp., 408 F. Supp. 3d 819, 831 (E.D. Tex. 2019) (quoting *Twombly*, 550 U.S. at 556)).

[41] Bogues v. La. Energy Consultants, Inc., 71 So.3d 1128, 1134 (La. App. 2 Cir. 2011).

[42] D.H. Griffin Wrecking Co., Inc. v. 1031 Canal Dev., LLC, 463 F. Supp. 3d 713, 724–25 (E.D. La. 2020) (Fallon, J.).

11

been held liable for the tort.'"[43] To succeed on a claim for tortious interference with business relations, "a plaintiff must prove by a preponderance of the evidence that the defendant: (1) 'acted with actual malice'; (2) 'actually prevented the plaintiff from dealing with a third party'; (3) acted 'improperly,' i.e., not to 'protect legitimate interests'; and (4) caused damage to the plaintiff.[44] "Significantly, it is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party."[45]

Here, Plaintiff alleges that "Defendants have acted wantonly and maliciously in improperly influencing third parties not to deal with Traffic Jam and these actions were not justified by any legitimate interest."[46] As support for this claim, Plaintiff alleges that Defendants have actively solicited Plaintiff's customers and have leaked confidential information to third persons. The Court acknowledges that Plaintiff's burden to ultimately succeed on this claim is a difficult one. At this very early stage, however, the Court finds that Plaintiff has plead facts sufficient to state a plausible claim for tortious interference with business relations. Defendants' Motion to Dismiss Plaintiff's tortious interference claim is denied.

---

[43] *D.H. Griffin Wrecking Company, Inc.*, 463 F. Supp. 3d at 725.
[44] IberiaBank v. Broussard, 907 F.3d 826, 841 (5th Cir. 2018) (citing *Bogues*, 71 So.3d at 1134–35; Henderson v. Bailey Bark Materials, 116 So.3d 30, 37 (La. App. 2 Cir. 2013).
[45] *Bogues*, 71 So.3d at 1135.
[46] Doc. 29 at 10.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Accordingly,

**IT IS ORDERED** that Plaintiff's claim against Defendants Lilley and LCI for breach of the Agreement's non-solicitation provision is hereby **DISMISSED**. Plaintiff's claims against Defendants for breach of the Agreement's confidentiality provisions and for tortious interference with business relations remain.

New Orleans, Louisiana this 1st day of April, 2021.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

13